## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

---

**BRENDA K. REYNOLDS,**

      **Plaintiff,**

**v.**                                     **CIVIL ACTION NO:** _____
                                                             **JURY DEMANDED**

**ST. JUDE CHILDREN'S**
**RESEARCH HOSPITAL, INC.,**

      **Defendant.**

---

## COMPLAINT

---

Comes now Brenda K. Reynolds, and brings this Complaint against her former employer, St. Jude Children's Research Hospital, Inc., for discrimination on account of sex and retaliation, including harassment and intimidation (hostile work environment), in violation of Title VII of the Civil Rights Act of 1964, as amended. Plaintiff further asserts a claim pursuant to the Tennessee Public Protection Act, Tenn. Code Ann. §50-1-304.

### I. PARTIES, JURISDICTION AND VENUE

1.     Plaintiff, Brenda K. Reynolds, is a female adult citizen of the State of Tennessee, residing at 1748 Fite Road, Memphis, TN 38127.

2.     St. Jude Children's Research Hospital, Inc., (hereinafter "St. Jude") is a corporation formed under the laws of Tennessee, with its principal offices located at 262 Danny Thomas Place, Memphis, Shelby County, Tennessee.  It may be reached

with service of process upon its registered agent, Robyn Diaz, 262 Danny Thomas Place, Memphis, Tennessee 38105-3678.

3.      Jurisdiction:  Federal question jurisdiction is conferred on this Court pursuant to 42 U.S.C. §2000e et. seq., and pursuant to 28 U.S.C. §1331 and §1343. Supplemental jurisdiction is appropriate in this action over the state law claim pursuant to 28 U.S.C. §1387.  Said state claim is so related to the federal claims that it forms part of the same case or controversy under Article III of the U. S. Constitution.  There are no reasons for declining jurisdiction.

4.      Venue is proper in this district pursuant to 28 U.S.C. §1391(b) and 1391(c); a part of the events or omissions giving rise to the claims accrued in this district, and the Defendant conducts business and may be reached with service of process in this district.

## II. EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.      Plaintiff filed a Charge of Discrimination (No. 490-2019-01766) with the U. S. Equal Employment Opportunity Commission ("EEOC") on July 25, 2019.  A true and correct copy of said charge is attached hereto as Exhibit "A."  Said charge was timely filed within 300 days of the events complained of.

6.      On August 6, 2019, the EEOC issued its Dismissal and Notice of Rights. Said Notice was allegedly mailed on that date.  Plaintiff received said Notice on August 11, 2019.  A true and correct copy of said Notice is attached hereto as Exhibit "B."

7.      This Complaint is timely filed, within 90 days of her receipt of the dismissal and Notice of Rights.

8.  Plaintiff has exhausted her administrative remedies on her claims.

9.  Plaintiff Brenda K. Reynolds ("Reynolds") was initially hired by St. Jude Children's Research Hospital, Inc. (hereinafter "St. Jude") as a housekeeper on March 31, 2014.  Plaintiff has been a good and conscientious employee.  She has not had attendance/tardiness problems.  Her evaluations have been good, usually 4.25 out of 5.0.  She has had no disciplinary problems until the events complained of.

10.  Plaintiff has been at all relevant times competent to perform the duties and responsibilities of her job.  There have not been any job performance issues.

### III. **FACTS**

11.  St. Jude has employed a male person, Gregory Mitchell, who services as a Manager of Environmental Services.  Plaintiff reported to one or more supervisors on the second shift.  They reported directly to Gregory Mitchell ("Mitchell").

12.  Mitchell is a womanizer.  He has repeatedly formed sexual relationships with female employees of St. Jude.  Some were consensual.  Others were not.  Several employees reported his sexual activities and demands to their supervisors.  Plaintiff understands numerous employees gave statements, which were taken up or discarded by Mitchell.  St. Jude knew or should have known of Mitchell's repeated harassment of female employees.

13.  By the Fall of 2018, Plaintiff had herself rejected Mitchell's overtures.  She is a happily married woman.  She by then learned from other employees how Mitchell had treated them.

14.    By the Fall of 2018, Plaintiff understood that Mitchell was involved with one of Plaintiff's co-workers, Latrina Reddick.  Reddick also reported to Supervisors who directly reported to Mitchell.

15.    Problems began between Latrina Reddick and Plaintiff, Brenda K. Reynolds, on or around November 26, 2018.  Reddick told a cafeteria worker (who had been burned out of his home) that Reynolds had offered to raise money for him. Reddick did this without Reynolds' knowledge and permission. Reddick was threatening to Reynolds.

16.    Reddick began harassing Reynolds on a daily basis.  She harassed other female employees, including Minnie Muse, Robyn Bradfield, Shatina Reddman and Kim Jordan.  She even disrespected supervisors, Ms. Kirk Washington and Ms. Daphne Halliburton.

17.    Plaintiff and other employees prepared statements, which were given to Mitchell.  Because he was in a sexual relationship with Reddick, he threw them away.

18.    Plaintiff learned that the statements had been tossed, and she took her concerns to the Human Resources office.  She first talked to Darcye Smith, in Human Resources.  Darcye Smith then brought Plaintiff's repeated concerns of harassment and hostile environment to the attention of Kathleen Speck, Director of Human Resources.

19.    Plaintiff continued working in an extremely hostile work environment. All of January 2019 was very bad.  Reddick picked on Plaintiff every day.  Plaintiff complained to her supervisor, Kirby Washington, who only suggested that Plaintiff

ignore Reddick.  It finally got bad enough that Mrs. Washington told Plaintiff to go to Human Resources, which she did.  On January 30, 2019, Plaintiff went to Darcye Smith in Human Resources. Ms. Smith asked Plaintiff what she wanted.  Plaintiff said she needed help, that Human Resources should talk to Reddick.

20.    The very next day Plaintiff discovered that her car had been "keyed."  It was badly scratched up.  The Security Department refused to look at the video cameras, which should have shown who did the damage.

21.    On February 12, 2019, Plaintiff received a text message from an unknown number.  It was very threatening.  It basically asserted that Plaintiff was trying to get her fired.  Plaintiff showed it to her supervisor, Kirby Washington. Plaintiff did not respond to the text.  Plaintiff reasonably concluded the text was from Reddick.  Washington also concluded it was from Reddick.  She also was having problems with Reddick.  But Washington told Plaintiff she did not want to lose her job – she was very afraid of Reddick.

22.    Plaintiff then went to Ms. Daphne Halliburton (Environmental Services) about Reddick.  She knew about Reddick.  She knew Reddick was after Plaintiff, that Plaintiff was being harassed and bullied.  Halliburton told Plaintiff to call the Hotline.  Plaintiff then called the Hotline.  Nothing resulted from that call.  To Plaintiff's knowledge, Kim Jordan also called the Hotline.  Nothing was done.

23.    Reddick's behavior was becoming increasingly physical.  She would encounter Plaintiff when Plaintiff was going through a doorway, and Reddick would bump into her intentionally.  Then Reddick would contend that Plaintiff was at fault. She did this to other employees, including Shatina Reddman.

24.     Plaintiff would be eating in the Cafeteria.  Reddick would make a scene, threatening Plaintiff and others.  She cursed Plaintiff; she cursed Ms. Muse, who wrote a statement.  These encounters occurred on or about February 28, 2019. Reddick was out of control, and no one from St. Jude was correcting her mis-behavior.

25.     On February 28, 2019, Plaintiff got off work, walking to her car. Reddick was getting in her car.  Plaintiff left the parking lot (St. Jude's).  As she drove towards home, she realized that Reddick was behind her, blowing her horn and repeatedly trying to run Plaintiff off the road.  Plaintiff was panicked.  Plaintiff tried to take pictures of her, and Reddick then turned away.

26.     Plaintiff called Washington at around 1:50 a.m. about the assault from Reddick.  The next day Plaintiff met with Washington and Halliburton.  They took her statement, and saw Plaintiff's pictures.  They called Security, who only suggested that Plaintiff call the police department.  Plaintiff then waited for MPD to arrive, and she gave an incident report.

27.     Reddick then missed three days of work.  On March 5, 2019, Reddick returned to work.  Mitchell and Steve Andrews (another Manager) called Reddick to their office.  Reddick was escorted off the property.  Mitchell then called Plaintiff to come to his office.  He apologized to Plaintiff, and told her she should "always feel safe" while at St. Jude.  He said "we are investigating."  Plaintiff did not feel safe. She did not believe his apology was genuine.

28.     The only result of Mitchell's investigation was:  Mitchell wanted for Plaintiff to "start over" - that there was "not enough evidence."

6

29.     Plaintiff was understandably unhappy with Mitchell's response.  But she was not surprised:  she well understood that Mitchell and Reddick were in a sexual relationship.   She also understood that St. Jude had several sexual harassment charges filed, alleging Mitchell was the harasser.  And Reddick had sent Plaintiff a picture of her new car, allegedly proof that the car was purchased by Mitchell. Plaintiff decided she had to go to someone else, not Mitchell.

30.     Plaintiff then went to Ms. Washington, and told her she was too scared to stay at work.  Plaintiff left early.  Before she left, she asked Security to escort her to her car.

31.     On March 12, 2019, Plaintiff went back to Human Resources and talked to Kathleen Speck, Director of Human Resources.  She told Ms. Speck the history of her problems with Reddick.  This was Plaintiff's first contact with Ms. Speck in the past five (5)  years.  Plaintiff showed her text messages and pictures, and told her about the assault (the car incident).   Plaintiff clearly stated that she was being harassed and bullied.   Speck did not take Plaintiff's allegations seriously.   She suggested that Plaintiff get counseling.  Her only comment about Reddick trying to run Plaintiff off the road: "we don't handle matters outside the gate."  Plaintiff cried, and Speck threw boxes of Kleenex at her.  The only solution she offered was to find Plaintiff a parking space close to the Security box.

32.     That evening Plaintiff tried to park in the new parking space, but Security knew nothing about it.  Plaintiff returned to where she had been parking.

33.     By then Plaintiff was exhausted.  No matter where she turned for help, nothing was done.

34.     On March 15, 2019, Plaintiff was leaving work with Ellen Robinson. Plaintiff looked back and saw Reddick behind her.  She was following Plaintiff.  She did not work in the same building, and had no reason to be where she was.  Plaintiff was terrified.

35.     Plaintiff decided to follow St. Jude policy.  She had already reported to Human Resources, to no avail.  Her next step was to go to Dr. Downing, the CEO. He has an Open Door Policy.

36.     On March 18, 2019, Plaintiff went to the Seventh Floor, and was told no one was in.  Plaintiff asked to speak to Dr. Downing or Mary Ann Gwen, who works with Downing.  His secretary gave Plaintiff her card, and said "We will call you."

37.     Plaintiff then gave the Security guard her number.

38.     On March 18, 2019, Plaintiff learned Dr. Downing was in his office, working late.  Plaintiff went up and spoke to him.  He told Plaintiff to come back one evening the next week, about 6:45.

39.     On March 25, 2019, Plaintiff went back to Dr. Downing's office, and spoke with Ms. Catherine (housekeeper).  Downing was not in, so Plaintiff sat down and wrote a letter, and slid it under Downing's door.  Plaintiff then returned to work.

40.     On March 26, 2019, Megan Kelly from Human Resources asked Plaintiff to come in to see her.  She was very angry, and threatened Plaintiff:  "do not ever go back to the seventh floor."  Plaintiff was still afraid of Reddick.  Now she was afraid of Human Resources, and its personnel.

41.     Manager Steve Andrews thereafter told Plaintiff that she was "making us look bad."   Megan Kelly allegedly did not know about the prior statements against

Mitchell.   The other ladies eventually went to Human Resources and gave statements.

42.   On March 27, 2019, Plaintiff called the secretary for Dr. Downing and asked if her appointment was cancelled.  She said no, and asked if Plaintiff was able to come.  Plaintiff told her that Megan Kelly had threatened her for trying to talk to Dr. Downing.  Plaintiff told the secretary that she was scared, and afraid.

43.   On March 28, 2019, at about 5:00 p.m. Plaintiff did as instructed:  she went to the seventh floor, and sat in the lobby.  Plaintiff then went to Pat Keel's office, where she told Ms. Keel her whole story, including the threats from Human Resources.

44.   Plaintiff continued seeing Reddick parking near Plaintiff's car.

45.   On April 3, 2019, there was another incident.  Reddick encountered Plaintiff in a hallway outside the Cafeteria.  Reddick kept walking towards Plaintiff, as if she was going to assault Plaintiff.  At the last minute she went through some revolving doors.  Plaintiff told Reddick's supervisor, but that did no good.  Plaintiff and Nina Brooks both wrote statements.

46.   On April 18, 2019, Megan Kelly called Plaintiff to come to her office, and then took Plaintiff to see Kathleen Speck.  Two men were present, namely Mr. Kurt (Director of Environmental Services) and Steve Dobbs (Union representative).  Neither of them had any knowledge of Plaintiff or her complaints.

47.   In that meeting Speck blamed Plaintiff for the incident in the hallway.  Plaintiff was not the aggressor, Reddick was.  Speck told Plaintiff to come back the next day.  She was particularly upset that Plaintiff had gone to Dr. Downing.  She

9

told Plaintiff: ". . . you don't have any business being up there, he's a very busy man, and he doesn't have time for you."

48.   Human Resources, in particular Speck, was furious at Plaintiff for going to the Seventh Floor.  Speck was retaliating against Plaintiff for making complaints to Dr. Downing about Mitchell and Reddick.  Speck said to Plaintiff: "you are messing up Mitchell and Reddick's character."  Mitchell had already admitted to Plaintiff that he was moved to the morning shift on account of his relationship with Reddick.  Speck told Plaintiff to return to her office on April 29, 2019 at 4:30 p.m.

49.   Plaintiff the next morning tried one last time to contact Dr. Downing. She told Etta Carole (secretary) what had happened in Human Resources, and what Kathleen Speck had said.  She promised to get back with Plaintiff.

50.   On April 29, 2019, Speck met with Plaintiff in the presence of Steve Andrews and Steve Dobbs.  She then told Plaintiff she was terminated.  Plaintiff was escorted off the property.

51.   Plaintiff was fired on account of her repeated complaints of harassment, bullying, and hostile environment.  She was fired most obviously for her reporting these problems to Dr. Downing's staff, to the embarrassment and humiliation of the Human Resource Department.

52.   A reasonable person in the same or similar circumstances would find the work environment to be abusive and/or hostile, and sufficiently severe as to be threatening to the employee's safety and security.

53.    As a direct and proximate result of the discriminatory acts set forth above including the intentional infliction of emotional distress, Plaintiff suffered the following injuries:

( ) embarrassment;

( ) humiliation;

( ) depression;

( ) persistent headaches;

( ) sleep problems:  inability to sleep, restless sleep, lack of rest;

( ) dread of going to work;

( )  loss of concentration;

( ) feelings she has lost control of her life and her career;

( ) interference with her marriage;

( ) extreme fright and inconsolable crying spells; and

( ) loss of self esteem.

54.    The injuries set forth have been suffered and will continue to be suffered into the foreseeable future.

55.    Defendant has intentionally and willfully violated Plaintiff's federally-protected rights.  An award of punitive damages is appropriate under the law.

56.    Defendant's actions and failures to act, i.e., failing to stop the hostile work environment and the retaliation, constitute an outrageous work environment directed towards Plaintiff.  The work environment was permeated with hostility, both severe and pervasive.  Defendant should be held liable for all causes of action raised herein.

57.     St. Jude through its agents, administrators, supervisors, and employees has intentionally, willfully and knowingly discriminated against Reynolds in the terms and conditions of her employment based upon hostile environment on account of her sex, female, has tolerated favoritism to Reddick by Mitchell based on their sexual relationship, and has tolerated and failed to stop the hostile environment perpetuated against Reynolds, or to rectify the egregious situation in any way.  It has taken retaliatory actions instead of correcting the egregious actions from Reddick and Mitchell, and from the Human Resources Department.

58.     Reynolds has sustained losses of back pay and benefits.

59.     Reynolds contends the Court should find St. Jude liable for the causes of action stated herein and that Reynolds should be made whole.  Make whole relief is a fundamental concept under federal fair employment laws.

60.     Plaintiff's job performance has always been consistent.  She has had no attendance or tardiness problems.  She has been uniformly cooperative with her supervisors and co-employees, despite constant harassment.  She has exhibited a positive attitude.  She has taken her assignments seriously, and has fully performed them.

61.     Plaintiff clearly informed St. Jude's Human Resource Department that she was being discriminated against.  No proper or meaningful investigation resulted from internal EEO complaints.  No prompt remedial action was undertaken to protect Plaintiff.

## IV.  CAUSES OF ACTION

### A.  FEDERAL CLAIMS

62.     Plaintiff incorporates paragraphs 1 through 61 as if copied in words and figures.

63.     Plaintiff states a claim based upon discrimination based on sex and for retaliation pursuant to Title VII, 42 U.S.C. §2000e.

## B. STATE CLAIM:

64.     Plaintiff incorporates paragraphs 1 through 63 as if copied in words and figures.

65.     Plaintiff states a claim against St. Jude based upon Tenn. Code Ann. §50-1-304, the Tennessee Public Protection Act.  Plaintiff went to Dr. Downing to make her complaints known.  She was thereafter fired, because of her audacity in reporting the malfeasance of numerous administrators to "the Seventh Floor."

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays for the following relief:

1.     Judgment be entered declaring that the actions of Defendant by and through its servants, agents and employees are in violation of Title VII;

2.     Award of all equitable relief and injunctive relief as may be appropriate, including back pay and benefits;

3.     Awarding Plaintiff judgment for compensatory and punitive damages for violation of Title VII (sex) (and hostile work environment) (and retaliation) in an amount not less than $300,000.00 against the Defendant;

4.      Awarding Plaintiff judgment for compensatory and punitive damages for the violation of Tenn. Code Ann. §50-1-304 in an amount not less than Three Million Dollars;

5.      Awarding Plaintiff her reasonable attorney's fees and costs of the cause, including discretionary costs; and

6.      All other relief, legal and equitable to which Plaintiff may be entitled under the premises.

JURY TRIAL IS DEMANDED.

Respectfully submitted,

KATHLEEN CALDWELL, PLLC

*s/Kathleen L. Caldwell, #9916*
2670 Union Avenue Ext., Suite 110
Memphis, TN 38112
Telephone:  (901) 458-4035
Facsimile:   (901) 458-4037
kathleencaldwell.attorney@gmail.com
*Attorney for Plaintiff*

14